# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-60977

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2014

Lyle W. Cayce
Clerk

DONALD EFREN FRANCO-CASASOLA,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

ON PETITION FOR PANEL REHEARING

Before OWEN, SOUTHWICK, and GRAVES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge.

Donald Efren Franco-Casasola's petition for panel rehearing is DENIED. We withdraw our prior opinion of March 6, 2014, and substitute the following.

The Board of Immigration Appeals ("BIA") determined that Franco-Casasola was ineligible for cancellation of removal due to his conviction of an aggravated felony. In our prior panel opinion, we concluded the BIA did not err in determining that his statute of conviction was divisible. We applied the modified categorical approach to decide he had been convicted of an aggravated felony. In his petition for rehearing, Franco-Casasola contends that under the recent Supreme Court authority, it was error to conclude that his statute of

No. 12-60977

conviction was divisible. *See Descamps v. United States*, 133 S. Ct. 2276 (2013). We disagree. Accordingly, we DENY the petition for review. We substitute the following opinion to explain the Court's holding in *Descamps*.

FACTUAL AND PROCEDURAL BACKGROUND

Franco-Casasola, a native and citizen of Guatemala, was admitted as an immigrant in Los Angeles, California, on May 29, 1992. On June 6, 2011, the Department of Homeland Security ("DHS") issued a notice to appear alleging that on April 1, 2011, Franco-Casasola was convicted of the fraudulent purchase of firearms for export in violation of 18 U.S.C. § 554(a). The notice alleged he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, namely "illicit trafficking in firearms." *See* 8 U.S.C. § 1101(a)(43)(C). Franco-Casasola denied the charges of removability and filed an application for cancellation of removal. DHS responded by contending he was ineligible for cancellation of removal because of his conviction for an aggravated felony. *See* 8 U.S.C. § 1229b(a).

The Immigration Judge ("IJ") held an evidentiary hearing. DHS submitted the indictment charging Franco-Casasola with conspiracy to purchase and export firearms and ammunition to drug cartels in Guatemala in violation of Section 554(a). Franco-Casasola pled guilty to buying five semi-automatic pistols knowing they were intended for export to Guatemala. The IJ decided that Franco-Casasola's conviction under Section 554(a) did not constitute the aggravated felony of illicit trafficking in firearms, making him eligible for discretionary relief from removal. It then determined, after having also heard testimony of Franco-Casasola's permanent resident status, work history, and family ties to the United States, that his case merited a favorable exercise of discretion and granted his application for cancellation of removal. DHS appealed to the BIA.

No. 12-60977

The BIA disagreed with the IJ.  It concluded that Franco-Casasola's conviction under Section 554(a) did constitute the aggravated felony of illicit trafficking in firearms, thereby making cancellation of removal unavailable. Franco-Casasola timely petitioned for review, and we denied his petition, agreeing with the conclusion of the BIA.  We now consider Franco-Casasola's petition for rehearing of our prior opinion.

## DISCUSSION

Generally, this court reviews only the final decision of the BIA.  *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007).  The BIA's determination that an alien is ineligible for cancellation of removal is a question of law we review *de novo*.  *Vasquez-Martinez v. Holder*, 564 F.3d 712, 715 (5th Cir. 2009).  While we give deference to the BIA's interpretation of immigration statutes, we review *de novo* the BIA's determination of whether a particular state or federal crime qualifies as an aggravated felony.  *Id.* at 717; *Patel v. Mukasey*, 526 F.3d 800, 802 (5th Cir. 2008).

An alien is eligible to seek discretionary cancellation of removal if he has been a lawful permanent resident for at least five years, has resided in the United States continuously for seven years after having been admitted under any status, and has not been convicted of an aggravated felony.  8 U.S.C. § 1229b(a).  An alien seeking cancellation of removal has the burden of showing by a preponderance of the evidence "that he is not an aggravated felon and is therefore statutorily eligible for relief."  *Vasquez-Martinez*, 564 F.3d at 715.

The question presented on appeal is how to determine whether a prior offense qualifies as an aggravated felony.  We start with the categorical approach in making that determination.  *Larin-Ulloa v. Gonzalez*, 462 F.3d 456, 463 (5th Cir. 2006).  Using this approach, the court "refer[s] only to the statutory definition of the crime for which the alien was convicted . . . and ask[s] whether that legislatively-defined offense necessarily fits within the

3

No. 12-60977

INA definition of an aggravated felony." *Id.* (citations omitted).  The statute

under which Franco-Casasola was convicted provides:

> Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 554(a).  This unusual criminal statute depends on there being other

laws or regulations that make unlawful the specific actions taken.  As we will

explain, the relevant elements of those other laws and regulations will also be

included in an indictment and the fact-finder will need to determine they were

committed. The aggravated felonies listed in the Immigration and Nationality

Act include "illicit trafficking in firearms or destructive devices. . . ."  8 U.S.C.

§ 1101(a)(43)(C).  The government does not argue that we should also examine

the other statute and regulations incorporated into this specific indictment and

apply the categorical approach to the entirety.  In any event, the categorical

approach does not answer whether Franco-Casasola's conviction was for the

aggravated felony of illicit trafficking in firearms.

We turn to the modified categorical approach.  *Larin-Ulloa*, 462 F.3d at

464.  This alternative requires that the statute of conviction be divisible.  *Id.*

When a statute of conviction is divisible, the modified categorical approach

allows examination of "the charging document, written plea agreement,

transcript of plea colloquy, and any explicit factual finding by the trial judge

to which the defendant assented" in addition to the language of the statute of

conviction to determine if a prior conviction constitutes an aggravated felony.

*Id.*  (citations and quotations omitted).

4

No. 12-60977

The Supreme Court has never addressed a statute of conviction that depends on other statutes and regulations to provide the specific elements of the offense charged. We conclude the Court would not declare that Congress's method of defining a crime under Section 554(a) makes the modified categorical approach inapplicable. Indeed, its application is straightforward. The approach can apply if we remain loyal to the central tenet of divisibility analysis of examining the statutorily provided elements of the offense. Only those elements may be used to form the relevant generic offense:

> The modified approach thus acts not as an exception [to the categorical approach], but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's.

*Descamps*, 133 S. Ct. at 2285. Section 554(a) criminalizes actions that are contrary to other laws and regulations. Once specifically identified in an indictment, those laws and regulations can also be the subject of the modified categorical approach. We will remain focused on the statutory elements of the offense charged and not on the facts of the offense committed.

The IJ and the BIA disagreed on the issue of whether Section 554(a) is divisible for purposes of application of the modified categorical approach. The BIA determined that Section 554(a) was divisible, relying on one of its earlier decisions and explaining that its methodology for analyzing whether a statute of conviction is divisible varies from the analysis this court uses. *See Matter of Lanferman*, 25 I. & N. Dec. 721, 725 (BIA 2012). In *Lanferman*, the BIA determined that in the immigration context, divisibility should be permitted in "all statutes of conviction . . . regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct." *Id.* at 727 (citations omitted). In selecting this broad

5

methodology for determining divisibility, the BIA specifically rejected as too formulaic this Court's divisibility approach. *Id.* at 725 (citing *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006); *Larin-Ulloa*, 462 F.3d 456). Here, the BIA applied its *Lanferman* decision to conclude Section 554(a) was divisible.

After the initial briefing in this case, the Supreme Court addressed the function of the modified categorical approach: "It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps*, 133 S. Ct. at 2283. The court explained that a statute defining an offense overbroadly is not divisible, a point we discuss below; a divisible statute is one defined "alternatively, with one statutory phrase corresponding to the generic crime and another not." *Id.* at 2286. The approved documents could then be used in the modified approach to discover "which statutory phrase, contained within a statute listing several different crimes, covered a prior conviction." *Id.* at 2285 (citations and quotations omitted).

The Ninth Circuit's *Descamps* decision concluded that the conceptual difference between divisible and indivisible statutes, i.e., that a divisible statute "creates an *explicitly* finite list of possible means of commission, while [an indivisible one] creates an *implied* list of every means of commission that otherwise fits the definition of a given crime," was not a meaningful one for purposes of the modified categorical approach. *Id.* at 2289 (citations and quotations omitted; alterations in original). The Court used the Ninth Circuit's own example to illustrate why the difference is, in fact, meaningful. The example used is the contrast between a statute that uses the term "weapon" and another that lists every kind of weapon in the statutory text of the offense. *Id.* The Supreme Court warned against the Ninth Circuit's approach of

reconceiving broad, indivisible statutes, like the "weapon" example, into divisible ones; unlike statutes with explicitly finite lists of means of commission, indivisible statutes do not enable the conclusion that "a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime." *Id.* at 2289-90. "As long as the statute itself requires only an indeterminate 'weapon,' that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention." *Id.* at 2290.

This example of what the Supreme Court rejected assists our analysis, as Section 554(a) provides a statutory means to make the objects of its reach determinate. Franco-Casasola's statute of conviction prohibits exporting, buying, selling, and other activities that facilitate the transportation of "merchandise, article[s], or object[s] contrary to any law or regulation of the United States. . . ." 18 U.S.C. § 554(a). Franco-Casasola violated the statute by fraudulently purchasing firearms for export to Guatemala. It is true that Section 554(a) does not list various merchandise, articles, or objects, and does not list "firearms" as an alternative element of the offense. It does, however, create an explicitly finite list of merchandise, articles, and objects in that it requires the defendant's actions to be "contrary to any law or regulation of the United States." The statute thereby incorporates as divisible elements the finite, though lengthy, list of every statute and regulation of the United States that make facilitating the transportation of "merchandise, article[s], or object[s]" an act that is "contrary to any law[.]"

A prosecutor charging a violation of Section 554(a) must select the relevant elements from the possible alternative statutes and regulations. *See Descamps*, 133 S. Ct. at 2289-90. Unlike the class of "overbroad" statutes *Descamps* describes, Section 554(a) requires the government to allege the defendant illegally facilitated the transportation of specific items identified in a statute. The problem in the *Descamps* example was that no statutory

language indicated the kind of weapon relevant to the crime.  The statutes and regulations identified in this indictment satisfy the divisibility requirement of *Descamps* and enable us "to determine whether the conviction was 'necessarily' for a particular crime defined by the statute that meets the [relevant] criterion." *Larin-Ulloa*, 462 F.3d at 464 (citing *Shepard v. United States*, 544 U.S. 13, 20-21 (2005)).

Consequently, the statute is divisible.  Of course, that fact does not answer our ultimate question, which is whether this conviction was for a firearms-trafficking offense.  For example, in a recent decision, the part of a divisible statute on which the conviction was based did not satisfy the relevant criterion, which was that a prior conviction be for drug trafficking, though other parts of the divisible statute would have sufficed.  *See United States v. Nunez-Segura*, 566 F. App'x 389, 393 (5th Cir. 2014).  The government argued that record evidence outside of the statute should be used to narrow the statutory language, but we rejected that approach.  *Id.* at 393-94.  Though the opinion is not precedential, we conclude it is consistent with our analysis here.

We now apply the modified categorical approach to determine if the applicable part of this finite list of alternative ways to commit a Section 554(a) crime constituted trafficking in firearms.  When there has been a "guilty plea conviction[] under such a divisible statute, we may consider, in addition to the language of the statute [here, all the statutes and regulations criminalizing the transportation of merchandise, articles, or objects], the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Larin-Ulloa*, 462 F.3d at 464 (citations and quotations omitted).

Franco-Casasola pled guilty to Count 18 of the indictment. As just noted, the indictment is one of the approved sources for determining which of several divisible elements of an offense apply to the conviction. One reason for its

inclusion in the approved sources for providing the needed narrowing of broader statutes is that an indictment must "contai[n] the elements of the offense charged and fairly infor[m] a defendant of the charge against which he must defend . . . ." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).  A defendant then is entitled to have jury instructions articulate all the essential elements of a charged offense.  *United States v. Hickman,* 331 F.3d 439, 443 (5th Cir. 2003).

The difficulty in *Descamps* was that the indictment could not narrow the overly-broad statute to a generic burglary because one element of generic burglary was not in the statute. "Whereas burglary statutes generally demand breaking and entering or similar conduct, California's does not: It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours." *Descamps,* 133 S.Ct. at 2282.  The district court in *Descamps* had determined from the plea colloquy in state court that a breaking and entering had actually occurred.  *Id.*  The colloquy, though, merely gave evidence of what Descamps factually had done and could not narrow the statutory crime.  Thus the district court had gone outside the statute to narrow it. Regardless of whether Descamps actually broke and entered and thereby committed generic burglary, the statute of conviction itself "does not require the factfinder (whether jury or judge) to make that determination." *Id.* at 2293.

As we will show, Franco-Casasola's statute of conviction, namely, Section 554(a), requires that he have also violated other statutes, which themselves provide elements that must be charged and proven to fact-finders.  Thus, even though Section 554(a) does not contain all the needed terms for our analysis of whether Franco-Casasola committed an aggravated felony, neither an indictment nor proper jury instructions would have charged him only with fraudulently buying in a manner that facilitated the transportation of "any merchandise, article or object, prior to exportation, knowing the same to be

intended for exportation contrary to any law or regulation of the United States." This indictment, as it was required to do, also charged specific laws that he violated and identified the operative terms. As we will show, jury instructions would have done the same. Thus Section 554(a) is not an overly broad statute as was that for burglary in California where, after conviction, only the facts of the crime but not the statute provided the necessary elements for an aggravated felony. Instead, reliance solely on the indictment will allow identification of the statutory elements that apply to the offense for which this defendant was charged and which a judge in accepting his guilty plea had to determine he had committed.

The indictment charged Franco-Casasola with violating Section 554(a) by engaging in conduct contrary to the Arms Export Control Act and certain International Trafficking in Arms Regulations. The merchandise identified in the indictment were five semi-automatic pistols of a specific manufacture. The specific language of the Count is this:

> On or about October 21, 2008, in the Middle District of Tennessee and elsewhere, defendant DONALD EFREN FRANCO, aided and abetted by others known and unknown to the Grand Jury, did fraudulently and knowingly buy, receive, conceal and facilitate the transportation, concealment and sale, prior to export from the United States, of merchandise, articles and objects, to wit: five FNH, Model Five-seven, 5.7 x 28mm semi-automatic pistols bearing serial numbers [XXX], knowing these to be intended for export to Guatemala without having obtained the required license and authorization from the United States Department of State, contrary to the Arms Export Control Act, Title 22, United States Code, Section 2778(b)(2) and (c), and the International Trafficking in Arms Regulations, Title 22, Code of Federal Regulations, Sections 121.3, 123.1 and 127.1.
>
> In violation of Title 18, United States Code, Sections 554(a) and 2.

The indictment started with the broad language under Section 554(a), then worked through each of the narrowing statutes and regulations. In

summary, the charge under the base statute is for buying and facilitating the transportation of "any merchandise, article, or object contrary to any law . . . ." 18 U.S.C. § 554(a). The indictment then identifies the Armed Export Control Act as such a law. Its statutory elements are that "no defense articles or defense services designated by the President . . . may be exported or imported without a license for such export or import." 22 U.S.C. § 2778(b)(2); *see also* § 2278(c) (prescribing the penalties for violations). Then the regulations identified in the indictment elaborate on the "defense articles."[1] Defense articles can be exported, but a cited regulation provides that "approval of the Directorate of Defense Trade Controls" must be obtained. 22 C.F.R. § 123.1(a). The final regulation cited in the indictment says it is unlawful "[t]o export or attempt to export from the United States any defense article . . . ." 22 C.F.R. § 127.1(a)(1). A regulation not listed in the indictment defines defense articles as "firearms," "technical data," and "defense services." 22 C.F.R. § 121.1.

We highlight a few parts of the indictment. The statutes cited in the indictment clarify that Franco-Casasola could not have been convicted without finding that he conspired to export "defense articles." The indictment did not use the phrase "defense articles" but instead articulated the relevant one that is explicitly covered by a referenced regulation, namely, firearms. The indictment charges that the defendant engaged in conduct under the Arms Export Control Act specifically with regards to five semi-automatic pistols. At no point is it necessary to rely on factual assertions to narrow a broader word such as "weapons." Instead, each step of the analysis under the statutes and regulations listed in the indictment follows the modified categorical approach of narrowing a list — quite a list, but still just a list.

---

[1] The first regulation apparently was cited in error, as it defines "aircraft" as a defense article for the purposes of import or export controls. 22 C.F.R. § 121.3.

11

The indictment thus charged Franco-Casasola under Section 554(a), which itself relies on actions that violate other laws and regulations, and also the specific statutory manner in which this Section 554(a) offense was committed.  Before accepting Franco-Casasola's guilty plea, the district judge needed to "compare: (1) the conduct to which the defendant admits; and (2) the elements of the offense charged in the indictment." *United States v. Broussard,* 669 F.3d 537, 546 (5th Cir. 2012) (citing *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001)). Acceptance of a guilty plea implies that the district court determined that the accused's "admitted conduct satisfied every element" of the indicted offense. *Id.*  The elements of the indicted offense under Section 554(a) are not just the general ones of that statute but also the more specific elements charged that are based on the accompanying statutory violations described in the indictment.  In other words, not only must Franco-Casasola be convicted of the elements of Section 554(a) which are a predicate to any indictment under that statute, he must also have been found guilty of each element of the other statutes that complete the offense.  We have quoted the indictment.  We have demonstrated that the elements of the offense that he fraudulently bought five semi-automatic pistols, knowing that they were intended for export to Guatemala and that the required license for the export had not been obtained, are all elements based on the statute or the regulations authorized by the statutes.  Unlike in *Descamps*, the judge needed to determine that Franco-Casasola had violated these specific provisions.

Though this conviction resulted from a guilty plea, our analysis must also be applicable to a jury trial.  Jury instructions need to charge each of the essential elements from the indictment, leaving it for jurors to determine whether the evidence supported each of those elements. *Hickman*, 331 F.3d at 443; *see also Decamps,* 133 S. Ct. at 2293.  Two discovered examples of Section 554(a) prosecutions from this circuit reveal that the instructions have

contained this kind of specificity for jurors, based on indictments which provided a thorough recounting of the general elements of Section 554(a) and the specific elements of the additional laws that complete the charged offense. *See United States v. Reyes*, 559 F. App'x 274 (5th Cir. 2014) (indictment and instructions are in 2:11-cr-01974-AM-3 (W.D. Tex.), ECF No. 17 (indictment), and No. 131 (instructions); *United States v. Bernardino*, 444 F. App'x 73 (5th Cir. 2011) (indictment and instructions are in 4:09-cr-00160-A-5 (N.D. Tex.), ECF No. 65 (indictment), and No. 147 (instructions)).

In an appeal from one of those convictions, we rejected the argument that another instruction had improperly been denied. *Bernardino*, 444 F. App'x at 74. The instruction would have informed jurors of a different mens rea allegedly relevant to the Arms Export Control Act, 22 U.S.C. § 2778(b)(2). We held that the defendant was convicted under Section 554(a), not under Section 2278(b)(2), and that the mental state necessary for Section 554(a) was the only one that had to be explained to jurors. *Id.* What he requested was this instruction: "That the defendant acted 'willfully,' that is, that the defendant knew such license was required for the export of these articles and intended to violate the law by exporting them without a license." As can be seen from a review of the instructions as cited above, all other elements of the Section 2778(b)(2) offense were explained to jurors, such as requiring a finding that the exported items were on the United States Munitions List and that the defendant had failed to obtain a license as required by Section 2778.

Should there be inconsistent provisions between Section 554(a) and one of the additionally indicted statutes, such as for the applicable mental state, those inconsistencies need to be resolved when instructing jurors. By its very nature, Section 554(a) requires that there be other laws that complete the offense that is charged. An indictment under Section 554(a) requires stating the other laws the defendant acted contrary to.

We have gone one step further than the Supreme Court has had to so far but have not strayed from the path it has marked. A divisible statute is one defined "alternatively, with one statutory phrase corresponding to the generic crime and another not." *Descamps*, 133 S. Ct. at 2286. In conducting the Section 554(a) analysis, which by its nature relies on other statutes and on regulations, we have considered the elements of Section 554(a) itself, the elements of the additional statutes identified in the indictment that are necessary to determine the specific Section 554(a) offense in the case, and the regulations cited in the indictment. That is appropriate. Divisibility analysis requires the optional means of committing a crime that can be narrowed by an indictment or other *Shepard* document to appear in the statutes on which the conviction is based. This rather unusually-defined but still statutorily-defined crime under Section 554(a) requires consideration of multiple statutes and federal regulations. Each of the "phrases" (to use the *Descamps* term) that informs us whether the charged crime fits the generic crime comes from those statutes or regulations, not from the facts of the offense. Franco-Casasola was convicted of these elements. He did not simply commit them.

In summary, under the *Descamps* analytical framework, Section 554(a) is a divisible statute defined in various alternatives by the finite list of United States statutes and regulations that a defendant's conduct could violate. By examining the charging documents, we can determine which law the defendant violated. That analysis shows his conviction was for "illicit trafficking in firearms," which is an aggravated felony.

We note that even though we are applying *Descamps*, the BIA had earlier relied on a different approach for determining whether a statute is divisible. *See Lanferman,* 25 I. & N. Dec. at 727. The BIA argued in its pre-*Descamps* briefing that its approach can be applied in its proceedings despite contrary Fifth Circuit authority. Nonetheless, while this case has been pending, the

No. 12-60977

BIA has abandoned *Lanferman* and acknowledged in a precedential opinion that the decision is inconsistent with *Descamps*. *Matter of Chairez-Castrejon*, 26 I. & N. Dec. 349, 353 (BIA 2014). The BIA stated that "going forward we are also bound to apply divisibility consistently with the individual circuit's interpretation of divisibility under *Descamps*." *Id.* at 354.

Accordingly, *Descamps* controls on the application of the modified categorical approach to determining whether Franco-Casasola had been convicted of an aggravated felony. Under *Descamps*, Section 554(a) is divisible and the BIA did not err in application of the modified categorical approach.

Franco-Casasola's petition for review is DENIED.

GRAVES, Circuit Judge, dissenting:

Donald Efren Franco-Casasola asserts in his petition for rehearing that the panel previously erred in concluding that his statute of conviction was divisible under *Descamps v. United States*, 133 S.Ct. 2276 (2013). I agree and would grant Franco-Casasola's petition.

In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court adopted a formal categorical approach setting out that courts may look only to the statutory definitions, i.e., elements, of a defendant's prior offense and not "to particular facts underlying those convictions." *Id.* at 600. The Court also recognized "a narrow range of cases" where a sentencing court could "go beyond the mere fact of conviction." *Id.* at 602. This narrow range of cases represents the modified categorical approach, which is permitted when a jury was actually required to find all of the elements of a generic offense. "For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement." *Id.*

The Supreme Court recently readdressed this in *Descamps*, which, as the majority states, is the controlling precedent on the categorical approach and the question of divisibility.

Franco-Casasola's statute of conviction says:

> Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any

## No. 12-60977

law or regulation of the United States, shall be fined under this
title, imprisoned not more than 10 years, or both.

18 U.S.C. § 554(a).

The majority says that the language "contrary to any law or regulation
of the United States" provides the "explicitly finite list" required by *Descamps*
to determine that the statute is divisible.  However, the language quoted by
the majority is actually a quote from the Ninth Circuit, which was reversed.
Specifically, the Supreme Court said:

> The Ninth Circuit defended its (excessively) modified
> approach by denying any real distinction between divisible and
> indivisible statutes extending further than the generic offense.
> "The only conceptual difference," the court reasoned, "is that [a
> divisible statute] creates an *explicitly* finite list of possible means
> of commission, while [an indivisible one] creates an *implied* list of
> every means of commission that otherwise fits the definition of a
> given crime." *Aguila–Montes*, 655 F.3d, at 927. For example, an
> indivisible statute "requir[ing] use of a 'weapon' is not
> meaningfully different"—or so says the Ninth Circuit—"from a
> statute that simply lists every kind of weapon in existence ... ('gun,
> axe, sword, baton, slingshot, knife, machete, bat,' and so on)." *Ibid.*
> In a similar way, every indivisible statute can be imaginatively
> reconstructed as a divisible one. And if that is true, the Ninth
> Circuit asks, why limit the modified categorical approach only to
> explicitly divisible statutes?

*Descamps*, 133 S.Ct. at 2289-90 (emphasis original).  The Supreme Court
later said that to accept that reasoning "would altogether collapse the
distinction between a categorical and a fact-specific approach."  *Id.* at 2290.

In my view, not only does the language "contrary to any law or regulation
of the United States" not provide an "explicitly finite list," but the use of that
language in an attempt to distinguish this case from *Descamps* is in error.

Section 554(a) prohibits exporting, buying, selling and other activities
facilitating the transportation of "merchandise, article[s], or object[s]."    18

## No. 12-60977

U.S.C. § 554(a). Section 554(a) does not include a list of various merchandise, articles or objects. Under *Descamps*, the offense in section 554(a) is defined in terms that are overbroad. Because the statute requires only the export of an indeterminate article or object, the statute falls into the category of indivisible statutes that the Supreme Court warns against reconceiving as impliedly divisible ones. *See Descamps*, 133 S.Ct. 2290.

Section 554(a) does not contain "firearms" as an alternative element of the offense and no part of the statute deals with gun trafficking. "Because of the mismatch in elements [with the aggravated felony of illicit trafficking in firearms], a person convicted under [section 554(a)] is never convicted of the [aggravated felony]." *Id.* at 2292. In other words, "[Franco-Casasola] may (or may not) have [trafficked firearms]. But [section 554(a)] – the crime of which he was convicted – does not require the factfinder (whether jury or judge) to make that determination." *Id.* at 2293. A finding that Franco-Casasola was convicted of illicit trafficking in firearms requires going beyond the statutory text of section 554(a) to the record for evidence of Franco-Casasola's conviction, a circumstance-specific review precluded by Supreme Court precedent on the categorical approach. *Id.* at 2286.

Under *Descamps*, section 554(a) is not divisible and the BIA erred in applying the modified categorical approach to look behind the statute of conviction for evidence that Franco-Casasola committed an aggravated felony.[1] Moreover, even if section 554(a) was divisible, the modified categorical approach would merely permit the court to "look beyond the elements and the fact of conviction only for the limited purpose of ascertaining which of the

---

[1] Though unpublished, this is also consistent with this court's recent decision in *United States v. Nunez-Segura,* 566 Fed. App'x 389 (5th Cir. 2014) (prior drug conviction where defendant admitted possessing methamphetamine with intent to sell was not drug trafficking for purposes of imposition of sentence enhancement).

disjunctive elements the charged conduct implicated." *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012). In this case, that would mean determining whether Franco-Casasola smuggled "merchandise, article[s], or object[s]" - none of which correspond to the generic crime of trafficking in firearms. *Descamps*, 133 S.Ct. at 2286. It would not allow the court to look to facts underlying the conviction, including those contained in the indictment, to determine whether Franco-Casasola's conduct conforms to the generic offense, as that is what the Supreme Court has "expressly and repeatedly forbidden." Id. at 2291.

The majority purports to conclude that section 554(a) is divisible under *Descamps* by its inclusion of "any law or regulation," but then goes beyond the statutory text to the record for evidence of Franco-Casasola's conviction and to locate a statute with an "explicitly finite list" which actually includes the term "firearms" so as to justify the pre-determination regarding divisibility. I disagree with any such circular analysis. Franco-Casasola was convicted solely under section 554(a) and there is no mention in Franco-Casasola's judgment of conviction of any other statutes discussed now by the majority. Franco-Casasola was not convicted of any violation under either the Arms Export Control Act or the International Trafficking in Arms Regulations.

Notwithstanding the error under *Descamps* in going beyond the text of 554(a), the other statutes and regulations cited by the majority do not support its conclusions. While the indictment does say that Franco-Casasola failed to obtain "the required license and authorization" under the Arms Export Control Act, 22 U.S.C. § 2778(b)(2) and (c), and the International Trafficking in Arms Regulations, 22 C.F.R. § 121.3, 123.1 and 127.1, none of those sections mention "firearms." As the majority concedes, those sections merely refer to "defense articles," "defense services," and "aircraft."

19

Undeterred, the majority then culls the term "firearms" from a regulation that is neither mentioned in the indictment, nor in the judgment of conviction. However, 22 C.F.R. § 121.1 plainly says that "the following articles, services, and related technical data are designated as defense articles and defense services pursuant to sections 38 and 47(7) of the Arms Export Control Act" and in no way reverts back to section 554(a), the only section under which Franco-Casasola was indicted or convicted.

While the majority ultimately concludes that there are "phrases" in one or more of the multiple statutes and regulations it considered that "informs us whether the charged crime fits the generic crime," it fails to specify any "phrases" establishing the elements of illicit trafficking in firearms in the actual statute of conviction. Thus, the statements that Franco-Casasola was "convicted of these elements" and "convicted for illicit trafficking in firearms" are clearly erroneous. Again, "[Franco-Casasola] may (or may not) have [trafficked firearms]. But [section 554(a)] – the crime of which he was convicted – does not require the factfinder (whether jury or judge) to make that determination." *Descamps* at 2293.

As the majority concedes, the indictment did not charge Franco-Casasola with violations of the Arms Export Control Act or the International Trafficking in Arms Regulations, nor was he charged with anything to support any statement that he transported "defense articles." The indictment, which is quoted by the majority, does not even include the phrase "defense articles." The relevant count of the indictment charged him with only a violation of section 554(a). Notably, other defendants were charged in the same indictment with violations of 22 U.S.C. 2778 - the Arms Export Control Act, which provides its own penalty. Also, more importantly, Franco-Casasola was charged in separate counts involving firearms under 18 U.S.C. §§ 922, 924. However, Franco-Casasola was not convicted on those counts. Thus, any effort to revive

those counts is clearly improper.   In reviving those counts, the majority is improperly rewriting Franco-Casasola's plea deal in contradiction of Supreme Court precedent.  *See Taylor*, 495 U.S. at 601–602; and *Descamps*, 133 S.Ct. at 2289.

The majority cites *Descamps* at pages 2289 and 2290 for the proposition that a prosecutor charging a violation of section 554 "must select the relevant elements from the possible alternative statutes and regulations."   However, *Descamps* says nothing about searching other statutes and regulations in an attempt to locate possible elements that will correspond to a separate generic crime. What the Court actually said on page 2290 was: "A prosecutor charging a violation of a *divisible* statute must generally select the relevant *element* from *its list of alternatives*."  *Id*. at 2290 (emphasis added).  Further, page 2289 of *Descamps* consists of the court's criticism of the Ninth Circuit's actions nearly identical to the majority's actions here.

Moreover, the conclusion that a violation of section 554(a) depends on proving violations of other laws, specifically the Arms Export Control Act or the International Trafficking in Arms Regulations, is without citation to any authority whatsoever.   Further, I note that although the majority discusses jury instructions at length, Franco-Casasola pleaded guilty.  A guilty plea analysis and a jury instruction analysis are not identical.  Again, it is improper for the majority to now rewrite Franco-Casasola's plea bargain based on facts it has obtained by looking beyond the statute of conviction.  *See Taylor*, 495 U.S. at 601–602; and *Descamps*, 133 S.Ct. at 2289.

Notwithstanding the irrelevancy of jury instructions, the authority cited by the majority contradicts its conclusion.  The majority cites *United States v. Bernardino*, 444 F.App'x 73 (5th Cir. 2011), as support for its conclusion that jury instructions and indictments must charge not only general elements of section 554 (a) but also elements from other statutes and regulations.

*Bernardino*, which is unpublished, directly contradicts the majority's conclusion. In that case, Daniel Bernardino appealed his conviction under section 554(a). Just as here, Bernardino's indictment charged him with exporting firearms and ammunition under section 554(a) without first obtaining a license required by 22 U.S.C. § 2778(b)(2). Bernardino requested and was denied a jury instruction regarding the elements of section 2778(b)(2). On appeal, this court affirmed the district court's finding that Bernardino was not entitled to a jury instruction regarding the elements of section 2778(b)(2) and said "[a]ll of Bernardino's arguments are premised on the mistaken view that he was charged and convicted under a different provision, 22 U.S.C. § 2778(c), which imposes penalties for 'willfully' violating 22 U.S.C. § 2778(b)'s licensing requirement." *Id.* at 74.[2] Such is the case here, as Franco-Casasola was neither charged nor convicted under 2778(b)(2) or (c). Thus, contrary to the majority's conclusion, even if Franco-Casasola had opted for a jury trial, he would not have been entitled to an instruction regarding the elements of 2778.

The majority then engages in a second improper analysis and apparently determines that there was a factual basis for Franco-Casasola's guilty plea – an issue that is not before us. In doing so, it says "[a]cceptance of a guilty plea implies that the district court determined that the accused's 'admitted conduct

---

[2] The majority opinion in *Bernardino* contains no statement that "[a]ll other elements of the Section 2778(b)(2) offense were explained to jurors, such as requiring a finding that the exported items were on the United States Munitions List and that the defendant had failed to obtain a license as required by Section 2778," and the majority here provides no citation for such a statement. However, even if some of the *Bernardino* instructions touched on elements of section 2778(b)(2), it does not change the conclusion of this court that no such instructions are necessary in a conviction under section 554. By suggesting otherwise, the majority now is, in effect, overruling *Bernardino* and concluding that defendants are entitled to jury instructions on all elements of any statutes mentioned in the indictment. Likewise, such an outcome would, in effect, establish the presumption that a guilty plea under one statute also establishes the elements of any statutes mentioned in the indictment. Such an outcome allows a court, such as the majority here, to later consider those other statutes as having been part of the conviction, thus both rewriting and negating any benefit of the plea bargain.

satisfied every element' of the indicted offense." However, the case cited by the majority actually says that the "admitted conduct satisfied every element of 18 U.S.C. § 2422(b)." *United States v. Broussard*, 669 F.3d 537, 546 (5th Cir. 2012). Here, that would mean determining that Franco-Casasola's admitted conduct satisfied the elements of section 554(a). While the district court considers the conduct and the elements of the offense charged in the indictment, the conduct must only satisfy the elements of the statute of conviction. *See Bernardino*, 444 F.App'x at 74.

The majority concedes that it has gone "one step further" than the Supreme Court. That "one step" is a giant leap. The leap from the statutory text of section 554(a) (smuggling goods from the United States) under the guise of "any law" to four other sections (mentioned in the indictment but not charged) regarding licensing to export "defense articles," and then to a previously unmentioned section listing "firearms" as possible "defense articles" under two specific sections not including section 554, is a feat squarely forbidden by *Descamps.* The majority correctly notes the *Descamps* admonition that a court may not look to facts underlying the conviction to determine if Franco-Casasola's conduct conforms to a generic offense. Nevertheless, "[i]nstead of reviewing documents like an indictment or plea colloquy only to determine which statutory phrase was the basis for the conviction, [the majority] look[ed] to those materials to discover what the defendant actually did." *Descamps*, 133 S.Ct. at 2288 (internal marks omitted).

The majority agrees that we determine whether a prior offense qualifies as an aggravated felony by using the categorical approach and determining whether the statutorily-defined offense fits within the definition of the aggravated felony. The majority further agrees that the statutorily-defined offense of smuggling goods from the United States does not fit within the aggravated felony of trafficking in firearms. Because none of the elements

necessary to establish a violation of smuggling goods corresponds to the generic offense of illicit trafficking in firearms, a modified categorical approach does not apply.  Thus, it is improper to consider the indictment or other documents – even if consideration of the indictment would provide evidence of a necessary element of the generic offense.   Accordingly, I would grant Franco-Casasola's petition for review and reverse the decision of the BIA.   Therefore, I respectfully dissent.