ON PETITION FOR PANEL REHEARING

LESLIE H. SOUTHWICK, Circuit Judge.
Donald Efren Franco-Casasola’s petition for panel rehearing is DENIED. We withdraw our prior opinion of March 6, 2014, and substitute the following.
The Board of Immigration Appeals (“BIA”) determined that Franco-Casasola was ineligible for cancellation of removal due to his conviction of an aggravated felony. In our prior panel opinion, we concluded the BIA did not err in determining that his statute of conviction was divisible. We applied the modified categorical approach to decide he had been convicted of an aggravated felony. In his petition for rehearing, Franco-Casasola contends that under the recent Supreme Court authority, it was error to conclude that his statute of conviction was divisible. See Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). We disagree. Accordingly, we DENY the petition for review. We substitute the following opinion to explain the Court’s holding in Descamps.
FACTUAL AND PROCEDURAL BACKGROUND
Franco-Casasola, a native and citizen of Guatemala, was admitted as an immigrant in Los Angeles, California, on May 29, 1992. On June 6, 2011, the Department of Homeland Security (“DHS”) issued a notice to appear alleging that on April 1, 2011, Franco-Casasola was convicted of the fraudulent purchase of firearms for export in violation of 18 U.S.C. § 554(a). The notice alleged he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony, namely “illicit trafficking in firearms.” See 8 U.S.C. § 1101(a)(43)(C). Franco-Casasola denied the charges of removability and filed an application for cancellation of removal. DHS responded by contending he was ineligible for cancellation of removal because of his conviction for an aggravated felony. See 8 U.S.C. § 1229b(a).
The Immigration Judge (“IJ”) held an evidentiary hearing. DHS submitted the indictment charging Franco-Casasola with conspiracy to purchase and export firearms and ammunition to drug cartels in Guatemala in violation of Section 554(a). Franco-Casasola pled guilty to buying five semi-automatic pistols knowing they were intended for export to Guatemala. The IJ decided that Franco-Casasola’s conviction under Section 554(a) did not constitute the aggravated felony of illicit trafficking in firearms, making him eligible for discretionary relief from removal. It then determined, after having also heard testimony of Franco-Casasola’s permanent resident status, work history, and family ties to the United States, that his case merited a *36 favorable exercise of discretion and granted his application for cancellation of removal. DHS appealed to the BIA.
The BIA disagreed with the IJ. It concluded that Franco-Casasola’s conviction under Section 554(a) did constitute the aggravated felony of illicit trafficking in firearms, thereby making cancellation of removal unavailable. Franco-Casasola timely petitioned for review, and we denied his petition, agreeing with the conclusion of the BIA. We now consider FrancoCasasola’s petition for rehearing of our prior opinion.
DISCUSSION
Generally, this court reviews only the final decision of the BIA. Zhu v. Gonzales, 493 F.3d 588, 593 (5th Cir.2007). The BIA’s determination that an alien is ineligible for cancellation of removal is a question of law we review de novo. Vasquez-Martinez v. Holder, 564 F.3d 712, 715 (5th Cir.2009). While we give deference to the BIA’s interpretation of immigration statutes, we review de novo the BIA’s determination of whether a particular state or federal crime qualifies as an aggravated felony. Id. at 717; Patel v. Mukasey, 526 F.3d 800, 802 (5th Cir.2008).
An alien is eligible to seek discretionary cancellation of removal if he has been a lawful permanent resident for at least five years, has resided in the United States continuously for seven years after having been admitted under any status, and has not been convicted of an aggravated felony. 8 U.S.C. § 1229b(a). An alien seeking cancellation of removal has the burden of showing by a preponderance of the evidence “that he is not an aggravated felon and is therefore statutorily eligible for relief.” Vasquez-Martinez, 564 F.3d at 715.
The question presented on appeal is how to determine whether a prior offense qualifies as an aggravated felony. We start with the categorical approach in making that determination. Larin-Ulloa v. Gonzales, 462 F.3d 456, 463 (5th Cir. 2006). Using this approach, the court “referís] only to the statutory definition of the crime for which the alien was convicted ... and ask[s] whether that legislatively-defined offense necessarily fits within the INA definition of an aggravated felony.” Id. (citations omitted). The statute under which Franco-Casasola was convicted provides:
Whoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both.
18 U.S.C. § 554(a). This unusual criminal statute depends on there being other laws or regulations that make unlawful the specific actions taken. As we will explain, the relevant elements of those other laws and regulations will also be included in an indictment and the fact-finder will need to determine they were committed. The aggravated felonies listed in the Immigration and Nationality Act include “illicit trafficking in firearms or destructive devices.... ” 8 U.S.C. § 1101(a)(43)(C). The government does not argue that we should also examine the other statute and regulations incorporated into this specific indictment and apply the categorical approach to the entirety. In any event, the categorical *37 approach does not answer whether Franco-Casasola’s conviction was for the aggravated felony of illicit trafficking in firearms.
We turn to the modified categorical approach. Larin-Ulloa, 462 F.3d at 464. This alternative requires that the statute of conviction be divisible. Id. When a statute of conviction is divisible, the modified categorical approach allows examination of “the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented” in addition to the language of the statute of conviction to determine if a prior conviction constitutes an aggravated felony. Id. (citations and quotations omitted).
The Supreme Court has never addressed a statute of conviction that depends on other statutes and regulations to provide the specific elements of the offense charged. We conclude the Court would not declare that Congress’s method of defining a crime under Section 554(a) makes the modified categorical approach inapplicable. Indeed, its application is straightforward. The approach can apply if we remain loyal to the central tenet of divisibility analysis of examining the statutorily provided elements of the offense. Only those elements may be used to form the relevant generic offense:
The modified approach thus acts not as an exception [to the categorical approach], but instead as a tool. It retains the categorical approach’s central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach’s basic method: comparing those elements with the generic offense’s.
Descamps, 133 S.Ct. at 2285. Section 554(a) criminalizes actions that are contrary to other laws and regulations. Once specifically identified in an indictment, those laws and regulations can also be the subject of the modified categorical approach. We will remain focused on the statutory elements of the offense charged and not on the facts of the offense committed.
The IJ and the BIA disagreed on the issue of whether Section 554(a) is divisible for purposes of application of the modified categorical approach. The BIA determined that Section 554(a) was divisible, relying on one of its earlier decisions and explaining that its methodology for analyzing whether a statute of conviction is divisible varies from the analysis this court uses. See Matter of Lanferman, 25 I. & N. Dec. 721, 725 (BIA 2012). In Lanferman, the BIA determined that in the immigration context, divisibility should be permitted in “all statutes of conviction ... regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct.” Id. at 727 (citations omitted). In selecting this broad methodology for determining divisibility, the BIA specifically rejected as too formulaic this Court’s divisibility approach. Id. at 725 (citing Amouzadeh v. Winfrey, 467 F.3d 451, 455 (5th Cir.2006); Larin-Ulloa, 462 F.3d 456). Here, the BIA applied its Lanferman decision to conclude Section 554(a) was divisible.
After the initial briefing in this case, the Supreme Court addressed the function of the modified categorical approach: “It helps effectuate the’ categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant’s conviction.” Descamps, 133 S.Ct. at 2283. The court explained that a statute defining an offense over-broadly is not divisible, a point we discuss below; a divisible statute is one defined “alternatively, with one statutory phrase *38 corresponding to the generic crime and another not.” Id. at 2286. The approved documents could then be used in the modified approach to discover “which statutory-phrase, contained within a statute listing several different crimes, covered a prior conviction.” Id. at 2285 (citations and quotations omitted).
The Ninth Circuit’s Descamps decision concluded that the conceptual difference between divisible and indivisible statutes, i.e., that a divisible statute “creates an explicitly finite list of possible means of commission, while [an indivisible one] creates an implied list of every means of commission that otherwise fits the definition of a given crime,” was not a meaningful one for purposes of the modified categorical approach. Id. at 2289 (citations and quotations omitted; alterations in original). The Court used the Ninth Circuit’s own example to illustrate why the difference is, in fact, meaningful. The example used is the contrast between a statute that uses the term “weapon” and another that lists every kind of weapon in the statutory text of the offense. Id. The Supreme Court warned against the Ninth Circuit’s approach of reconceiving broad, indivisible statutes, like the “weapon” example, into divisible ones; unlike statutes with explicitly finite lists of means of commission, indivisible statutes do not enable the conclusion that “a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime.” Id. at 2289-90. “As long as the statute itself requires only an indeterminate ‘weapon,’ that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention.” Id. at 2290.
This example of what the Supreme Court rejected assists our analysis, as Section 554(a) provides a statutory means to make the objects of its reach determinate. Franco-Casasola’s statute of conviction prohibits exporting, buying, selling, and other activities that facilitate the transportation of “merchandise, article[s], or objects] contrary to any law or regulation of the United States....” 18 U.S.C. § 554(a). Franco-Casasola violated the statute by fraudulently purchasing firearms for export to Guatemala. It is true that Section 554(a) does not list various merchandise, articles, or objects, and does not list “firearms” as an alternative element of the offense. It does, however, create an explicitly finite list of merchandise, articles, and objects in that it requires the defendant’s actions to be “contrary to any law or regulation of the United States.” The statute thereby incorporates as divisible elements the finite, though lengthy, list of every statute and regulation of the United States that make facilitating the transportation of “merchandise, artiele[s], or object[s]” an act that is “contrary to any law[.]”
A prosecutor charging a violation of Section 554(a) must select the relevant elements from the possible alternative statutes and regulations. See Descamps, 133 S.Ct. at 2289-90. Unlike the class of “overbroad” statutes Descamps describes, Section 554(a) requires the government to allege the defendant illegally facilitated the transportation of specific items identified in a statute. The problem in the Descamps example was that no statutory language indicated the kind of weapon relevant to the crime. The statutes and regulations identified in this indictment satisfy the divisibility requirement of Descamps and enable us “to determine whether the conviction was ‘necessarily’ for a particular crime defined by the statute that meets the [relevant] criterion.” Larin-Ulloa, 462 F.3d at 464 (citing. Shepard v. United States, 544 U.S. 13, *39 20-21, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)).
Consequently, the statute is divisible. Of course, that fact does not answer our ultimate question, which is whether this conviction was for a firearms-trafficking offense. For example, in a recent decision, the part of a divisible statute on which the conviction was based did not satisfy the relevant criterion, which was that a prior conviction be for drug trafficking, though other parts of the divisible statute would have sufficed. See United States v. Nunez-Segura, 566 Fed.Appx. 389, 393 (5th Cir.2014). The government argued that record evidence outside of the statute should be used to narrow the statutory language, but we rejected that approach. Id. at 393-94. Though the opinion is not precedential, we conclude it is consistent with our analysis here.
We now apply the modified categorical approach to determine if the applicable part of this finite list of alternative ways to commit a Section 554(a) crime constituted trafficking in firearms. When there has been a “guilty plea conviction[ ] under such a divisible statute, we may consider, in addition to the language of the statute [here, all the statutes and regulations criminalizing the transportation of merchandise, articles, or objects], the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.” Larin-Ulloa, 462 F.3d at 464 (citations and quotations omitted).
Franco-Casasola pled guilty to Count 18 of the indictment. As just noted, the indictment is one of the approved sources for determining which of several divisible elements of an offense apply to the conviction. One reason for its inclusion in the approved sources for providing the needed narrowing of broader statutes is that an indictment must “contai[n] the elements of the offense charged and fairly infor[m] a defendant of the charge against which he must defend.... ” United States v. Resendiz-Ponce, 549 U.S. 102, 108, 127 S.Ct. 782, 166 L.Ed.2d 591 (2007) (quoting Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). .A defendant then is entitled to have jury instructions articulate all the essential elements of a charged offense. United States v. Hickman, 331 F.3d 439, 443 (5th Cir.2003).
The difficulty in Descamps was that the indictment could not narrow the overly-broad statute to a generic burglary because one element of generic burglary was not in the statute. “Whereas burglary statutes generally demand breaking and entering or similar conduct, California’s does not: It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours.” Descamps, 133 S.Ct. at 2282. The district court in Descamps had determined from the plea colloquy in state court that a breaking and entering had actually occurred. Id. The colloquy, though, merely gave evidence of what Descamps factually had done and could not narrow the statutory crime. Thus the district court had gone outside the statute to narrow it. Regardless of whether Descamps actually broke and entered and thereby committed generic burglary, the statute of conviction itself “does not require the factfinder (whether jury or judge) to make that determination.” Id. at 2293.
As we will show, Franco-Casasola’s statute of conviction, namely, Section 554(a), requires that he have also violated other statutes, which themselves provide elements that must be charged and proven to fact-finders. Thus, even though Section 554(a) does not contain all the needed terms for our analysis of whether Franco *40 Casasola committed an aggravated felony, neither an indictment nor proper jury instructions would have charged him only with fraudulently buying in a manner that facilitated the transportation of “any merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.” This indictment, as it was required to do, also charged specific laws that he violated and identified the operative terms. As we will show, jury instructions would have done the same. Thus Section 554(a) is not an overly broad statute as was that for burglary in California where, after conviction, only the facts of the crime but not the statute provided the necessary elements for an aggravated felony. Instead, reliance solely on the indictment will allow identification of the statutory elements that apply to the offense for which this defendant was charged and which a judge in accepting his guilty plea had to determine he had committed.
The indictment charged Franco-Casasola with violating Section 554(a) by engaging in conduct contrary to the Arms Export Control Act and certain International Trafficking in Arms Regulations. The merchandise identified in the indictment were five semi-automatic pistols of a specific manufacture. The specific language of the Count is this:
On or about October 21, 2008, in the Middle District of Tennessee and elsewhere, defendant DONALD EFREN FRANCO, aided and abetted by others known and unknown to the Grand Jury, did fraudulently and knowingly buy, receive, conceal and facilitate the transportation, concealment and sale, prior to export from the United States, of merchandise, articles and objects, to wit: five FNH, Model Five-seven, 5.7 x 28mm semi-automatic pistols bearing serial numbers [XXX], knowing these to be intended for export to Guatemala without having obtained the required license and authorization from the United States Department of State, contrary to the Arms Export Control Act, Title 22, United States Code, Section 2778(b)(2) and (c), and the International Trafficking in Arms Regulations, Title 22, Code of Federal Regulations, Sections 121.3, 123.1 and 127.1.
In violation of Title 18, United States Code, Sections 554(a) and 2.
The indictment started with the broad language under Section 554(a), then worked through each of the narrowing statutes and regulations. In summary, the charge under the base statute is for buying and facilitating the transportation of “any merchandise, article, or object contrary to any law....” 18 U.S.C. § 554(a). The indictment then identifies the Armed Export Control Act as such a law. Its statutory elements are that “no defense articles or defense services designated by the. President ... may be exported or imported without a license for such export or import.” 22 U.S.C. § 2778(b)(2); see also § 2278(c) (prescribing the penalties for violations). Then the regulations identified in the indictment elaborate on the “defense articles.”[1] Defense articles can be exported, but a cited regulation provides that “approval of the Directorate of Defense Trade Controls” must be obtained. 22 C.F.R. § 123.1(a). The final regulation cited in the indictment says it is unlawful “[t]o export or attempt to export from the United States any defense article.... ” 22 C.F.R. § 127.1(a)(1). A regulation not listed in the indictment defines defense arti *41 cíes as “firearms,” “technical data,” and “defense services.” 22 C.F.R. § 121.1.
We highlight a few parts of the indictment. The statutes cited in the indictment clarify that Franco-Casasola could not have been convicted without finding that he conspired to export “defense articles.” The indictment did not use the phrase “defense articles” but instead articulated the relevant one that is explicitly covered by a referenced regulation, namely, firearms. The indictment charges that the defendant engaged in conduct under the Arms Export Control Act specifically with regards to five semi-automatic pistols. At no point is it necessary to rely on factual assertions to narrow a broader word such as “weapons.” Instead, each step of the analysis under the statutes and regulations listed in the indictment follows the modified categorical approach of narrowing a list — quite a list, but still just a list.
The indictment thus charged FrancoCasasola under Section 554(a), which itself relies on actions that violate other laws and regulations, and also the specific statutory manner in which this Section 554(a) offense was committed. Before accepting Franco-Casasola’s guilty plea, the district judge needed to “compare: (1) the conduct to which the defendant admits; and (2) the elements of the offense charged in the indictment.” United States v. Broussard, 669 F.3d 537, 546 (5th Cir.2012) (citing United States v. Marek, 238 F.3d 310, 315 (5th Cir.2001)). Acceptance of a guilty plea implies that the district court determined that the accused’s “admitted conduct satisfied every element” of the indicted offense. Id. The elements of the indicted offense under Section 554(a) are not just the general ones of that statute but also the more specific elements charged that are based on the accompanying statutory violations described in the indictment. In other words, not only must Franco-Casasola be convicted of the elements of Section 554(a) which are a predicate to any indictment under that statute, he must also have been found guilty of each element of the other statutes that complete the offense. ■ We have quoted the indictment. We have demonstrated that the elements of the offense that he fraudulently bought five semi-automatic pistols, knowing that they were intended for export to Guatemala and that the required license for the export had not been obtained, are all elements based on the statute or the regulations authorized by the statutes. Unlike in Descamps, the judge needed to determine that FrancoCasasola had violated 'these specific provisions.
Though this conviction resulted from a guilty plea, our analysis must also be applicable to a jury trial. Jury instructions need to charge each of the essential elements from the indictment, leaving it for jurors to determine whether the evidence supported each of those elements. Hickman, 331 F.3d at 443; see also Descamps, 133 S.Ct. at 2293. Two discovered examples of Section 554(a) prosecutions from this circuit reveal that the instructions have contained this kind of ‘specificity for jurors, based on indictments which provided a thorough recounting of the general elements of Section 554(a) and the specific elements of the additional laws that complete the charged offense. See United States v. Reyes, 559 Fed.Appx. 274 (5th Cir.2014) (indictment and instructions are in 2:11-cr-01974-AM-3 (W.D.Tex.), ECF No. 17 (indictment), and No. 131 (instructions)); United States v. Bernardino, 444 Fed.Appx. 73 (5th Cir.2011) (indictment and instructions are in 4:09-cr-00160-A-5 (N.D.Tex.), ECF No. 65 (indictment), and No. 147 (instructions)).
In an appeal from one of those convictions, we rejected the argument that an *42 other instruction had improperly been denied. Bernardino, 444 Fed.Appx. at 74. The instruction would have informed jurors of a different mens rea allegedly relevant to the Arms Export Control Act, 22 U.S.C. § 2778(b)(2). We held that the defendant was convicted under Section 554(a), not under Section 2278(b)(2), and that the mental state necessary for Section 554(a) was the only one that had to be explained to jurors. Id. What he requested was this instruction: “That the defendant acted ‘willfully,’ that is, that the defendant knew such license was required for the export of these articles and intended to violate the law by exporting them without a license.” As can be seen from a review of the instructions as cited above, all other elements of the Section 2778(b)(2) offense were explained to jurors, such as requiring a finding that the exported items were on the United States Munitions List and that the defendant had failed to obtain a license as required by Section 2778.
Should there be inconsistent provisions between Section 554(a) and one of the additionally indicted statutes, such as for the applicable mental state, those inconsistencies need to be resolved when instructing jurors. By its very nature, Section 554(a) requires that there be other laws that complete the offense that is charged. An indictment under Section 554(a) requires stating the other laws the defendant acted contrary to.
We have gone one step further than the Supreme Court has had to so far but have not strayed from the path it has marked. A divisible statute is one defined “alternatively, with one statutory phrase corresponding to the generic crime and another not.” Descamps, 133 S.Ct. at 2286. In conducting the Section 554(a) analysis, which by its nature relies on other statutes and on regulations, we have considered the elements of Section 554(a) itself, the elements of the additional statutes identified in the indictment that are necessary to determine the specific Section 554(a) offense in the case, and the regulations cited in the indictment. That is appropriate. Divisibility analysis requires the optional means of committing a crime that can be narrowed by an indictment or other Shepard document to appear in the statutes on which the conviction is based. This rather unusually-defined but still statutorily-defined crime under Section 554(a) requires consideration of multiple statutes and federal regulations. ' Each of the “phrases” (to use the Descamps term) that informs us whether the charged crime fits the generic crime comes from those statutes or regulations, not from the facts of the offense. Franco-Casasola was convicted of these elements. He did not simply commit them.
In summary, under the Descamps analytical framework, Section 554(a) is a divisible statute defined in various alternatives by the finite list of United States statutes and regulations that a defendant’s conduct could violate. By examining the charging documents, we can determine which law the defendant violated. That analysis shows his conviction was for “illicit trafficking in firearms,” which is an aggravated felony.
We note that even though we are applying Descamps, the BIA had earlier relied on a different approach for determining whether a statute is divisible. See Lanferman, 25 I. & N. Dec. at 727. The BIA argued in its pre-Descamps briefing that its approach can be applied in its proceedings despite contrary Fifth Circuit authority. Nonetheless, while this case has been pending, the BIA has abandoned Lanferman and acknowledged in a precedential opinion that the decision is inconsistent with Descamps. Matter of Chairez-Castrejon, 26 I. & N. Dec. 349, 353 (BIA *43 2014). The BIA stated that “going forward we are also bound to apply divisibility consistently with the individual circuit’s interpretation of divisibility under Descamps.” Id. at 354.
Accordingly, Descamps controls on the application of the modified categorical approach to determining whether FrancoCasasola had been convicted of an aggravated felony. Under Descamps, Section 554(a) is divisible and the BIA did not err in application of the modified categorical approach.
Franco-Casasola’s petition for review is DENIED.

. The first regulation apparently was cited in error, as it defines "aircraft” as a defense article for the purposes of import or export controls. 22 C.F.R. § 121.3.